UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRUCE JANSEN,

               Petitioner,          **DECISION AND ORDER**
    -vs-                             No. 02-CV-0827

MONROE COUNTY, and the PEOPLE
OF THE STATE OF NEW YORK,

               Respondents.
_____

## INTRODUCTION

Petitioner, Bruce Jansen ("Jansen"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on charges that he engaged in a course of sexual conduct against a child in the first degree in violation of New York Penal Law § 130.75(a). The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The conviction here at issue stems from Jansen's alleged sexual abuse of his fiancée's seven-year-old daughter over the course of a year from June 1997 to June 1998. After Jansen's adult biological daughter caught him and the child complainant in the middle of an improper act, the police were notified and Jansen was taken in for questioning. He voluntarily gave a statement to the police in which he admitted that, over the course of a year, he regularly made the young girl perform fellatio on him. *See* Respondent's Appendix ("App.") G at 45-46, attached to Docket #9.

Jansen waived his right to a jury trial and had a bench trial in Monroe County Court

(Connell, J.). At trial, the prosecution offered into proof Jansen's inculpatory statement to the police, the statement and testimony of Jansen's adult daughter, who had discovered petitioner engaging the sexual conduct with the complainant, and the child complainant's testimony. Jansen did not testify. On June 21, 1999, the trial court convicted Jansen as charged in the indictment and sentenced him to twelve and one-half to twenty-five years imprisonment.

Jansen's conviction was affirmed on direct appeal by a divided panel of the Appellate Division, Fourth Department, of New York State Supreme Court on December 21, 2001. *People v. Jansen*, 289 A.D.2d 1050, 735 N.Y.S.2d 845 (App. Div. 4th Dept. 2001). On March 8, 2002, the New York Court of Appeals granted leave to appeal the following issue: whether the Appellate Division violated his appellate due process rights when it denied his request for access to the grand jury minutes. *People v. Jansen*, 97 N.Y.2d 755, 769 N.E.2d 362, 742 N.Y.S.2d 616 (N.Y. 2002). On October 22, 2002, the New York Court of Appeals unanimously affirmed the Appellate Division's decision and consolidated Jansen's appeal with that of another defendant's. *See People v. Robinson, et al.*, 98 N.Y.2d 755, 781 N.E.2d 908, 751 N.Y.S.2d 843 (N.Y. 2002). The Court of Appeals held that Jansen failed to meet his threshold burden of demonstrating a compelling and particularized need for the minutes. *Id.*

This habeas petition followed. For the reasons set forth below, relief is denied.

**DISCUSSION**

**1.      Grand jury claims**

Jansen principally complains about alleged defects in the grand jury proceeding and the prosecutor's failure to turn over the grand jury minutes to trial counsel and appellate counsel. To the extent Jansen is asserting defects in, or errors stemming from, the grand jury proceeding,

such a claim is not cognizable on federal habeas review because Jansen was convicted after a bench trial in which the judge, as the trier of fact, found him guilty beyond a reasonable doubt. *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989). In *Lopez*, the Second Circuit considered whether claims of error in a grand jury proceeding, including insufficiency of evidence to indict and the prosecutor's failure to present exculpatory evidence, are cognizable in a federal habeas corpus proceeding.  The court held that such challenges to a state grand jury proceeding will not permit habeas relief, finding dispositive the Supreme Court's holding in *United States v. Mechanik*, 475 U.S. 66 (1986). Confronted with a constitutional attack on a federal grand jury proceeding, the Supreme Court stated in *Mechanik* that

> the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt.  Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*Id.* at 70 (footnote omitted).  Based on that proposition, the Second Circuit reasoned that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in federal court." *Lopez*, 865 F.2d at 32 (holding that habeas petitioner's "claims of impropriety before the grand jury in this case concern[ing] the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the law" . . . were "cured in the trial before the petit jury, which convicted"). Thus, the guilty verdict at Jansen's bench trial precludes habeas review of all of Jansen's claims that relate to the grand jury proceeding.

**2.**     ***Brady* violation**

Under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, state as well as federal prosecutors must turn over exculpatory and impeachment evidence, whether or not requested by the defense, where the evidence is material to guilt or to punishment. *E.g.*, *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999); *United States v. Bagley*, 473 U.S. 667, 676, 682 (1985); *United States v. Agurs*, 427 U.S. 97, 107 (1976). The Supreme Court has rejected any distinction between impeachment evidence and exculpatory evidence. *See*, *e.g.*, *Bagley*, 473 U.S. at 676. Impeachment evidence "is 'evidence favorable to an accused,' *Brady*, 373 U.S. at 87, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." *Id.*; *accord United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004) (noting that impeachment evidence is evidence "'having the potential to alter the jury's assessment of the credibility of a significant prosecution witness'" ) (quoting *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998)). The prosecutor "has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

In *Strickler*, the Supreme Court explained that there are "three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler*, 527 U.S. at 281-82; *see also Boyette v. Lefevre*, 246 F.3d 76, 89 (2d Cir. 2001). The prosecution's failure to disclose the evidence must be of "'sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Bagley*, 473 U.S. at 676 (quoting *Agurs*, 427 U.S. at 108); *see also Kyles*, 514 U.S. at 434-35. The Court will consider each component of Jansen's *Brady* claim in turn.

### a. Favorable to the accused

Clearly, the child complainant's testimony to the grand jury denying that she was sexually abused by Jansen was both potentially exculpatory evidence and impeachment material that fell within the ambit of *Brady*. *See*, *e.g.*, *Stevens v. Miller*, No. CIV. 96CV1626NAMGLS, 1999 WL 33504438, at *5 (N.D.N.Y. Mar. 5, 1999) ("There is no question that the People had a duty to produce documents indicating that prosecution witnesses had made statements denying allegations of sexual abuse."); *United States v. Gil*, 297 F.3d 93, 101 (2d Cir. 2002) (holding that evidence is favorable to the accused if it either "tends to show that the accused is not guilty" or "impeaches a government witness."). The next question is whether the belated disclosure of the grand jury testimony amounted to "suppression" for purposes of establishing a *Brady* violation.

### b. Suppression

The Second Circuit has explained that the Constitution requires neither that *Brady* material be disclosed well in advance of trial nor that a new trial automatically be granted when disclosure is made on the eve of –or even during– "the midst of the pressures and paranoias or trial." *Leka v. Portuondo*, 257 F.3d 89, 100, 103 (2d Cir. 2001) ("It is not feasible or desirable to specify the extent or timing of disclosure *Brady* and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made. Thus disclosure prior to trial is not mandated.") (citing *United States ex rel. Lucas v. Regan*, 503 F.2d 1, 3 n. 1 (2d Cir. 1974); *Grant v. Alldredge*, 498 F.2d 376, 382 (2d Cir. 1974)). The prosecution's *Brady* obligation continues throughout the trial and even after the verdict is rendered. *Leka*, 257 F.3d at 103 (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 n. 25 (1976) (noting that the duty to make *Brady* disclosures at trial "is enforced by the requirements

of due process")). Thus, in order to determine whether there was a "suppression" under the meaning of *Brady* and its progeny, the Court must consider whether Jansen was deprived of a meaningful opportunity to use the impeachment evidence. *See id.*

After lunch recess on the first day of trial, defense counsel noted on the record that the prosecutor had provided her with the child complainant's grand jury testimony that morning, about ten minutes before opening statements. T.101, 115.[1] (The prosecutor disagreed, stating that it was actually a half an hour before. T.116.) Defense counsel stated that she had a chance to review them over the break and that there were "some issues" that she needed to address with the trial court. *Id.* Counsel noted that "[i]n the grand jury, [the complainant] testified to some of the substantive issues she testified to today, and at grand jury, she did deny that the incidents occurred." *Id.* Thus, argued counsel, the grand jury minutes qualified as *Brady* material. T.103-04. The prosecutor responded by acknowledging that he "should have realized that in some sense it possibly was some sort of [*Brady*] material[.]" but noted that defense counsel had the opportunity to review the minutes of the child's testimony at the grand jury proceeding before she took the stand. T.106.

The trial judge agreed that defense counsel "certainly" was entitled to see the grand jury minutes since they were *Brady* material and stated that if she wanted a further recess to review them, he would afford her one. T.107, 116-17. Defense counsel accepted the offer and stated she would like a recess of twenty-four hours. T.108. The following day, defense counsel renewed her request for a mistrial based on the prosecutor's failure to fulfill his *Brady* obligations. T.115-16. The trial judge denied defense counsel's request for a mistrial:

---

[1] Citations to "T.__" refer to the trial transcript.

> I think there are ways to correct it [the *Brady* violation], and frankly, I don't think when a victim is on the stand and you've got the information in front of you that she denied it happening, . . . I don't think it is a particularly complicated issue to ask . . . if she did not, in fact, say it. I mean, it was clear to me just from the avenue you were walking down that there probably was an issue in the grand jury about it.

T.117. The trial judge also rejected defense counsel's argument that her ability to cross-examine was impaired by the belated disclosure:

> This wasn't a complicated issue. This was a victim, a complaining witness, testifying that certain events occurred and testimony in your possession given by that complaining witness on another occasion that those events did not occur. . . . I think it could have been explored more. If you want the victim back on the stand to ask those questions, I will direct the District Attorney to bring [her] back."

T.119. Defense counsel reiterated that the remedy she wanted was a mistrial. She then stated that rather than subjecting the child to more cross-examination, it might be sufficient for the prosecutor to stipulate to the fact that when the complainant testified before the grand jury, she gave testimony denying that the incidents occurred.[2] T.119. The prosecutor agreed to so stipulate. *Id.*

In light of the foregoing, Jansen's argument as to why defense counsel did not have a meaningful opportunity to utilize the *Brady* material is unconvincing. Essentially, Jansen contends that the delay deprived him of the opportunity to use the grand jury testimony in making his choice between a jury trial and a bench trial. He argues that "where the chief strategy at trial is a legal dispute a bench trial is sensible, where the chief issue is a factual dispute the

---

[2] The specific stipulation was that "in response to the question did you ever have to practice something with your dad, her answer was no; and with respect to do you remember using your hands any time on your dad, her answer was no; and did you have ever have to touch your dad, her answer was no." T.120-21. (Apparently, although not related to him, the child referred to petitioner as her "dad.") In his statement to the police, Jansen stated that he started having the complainant "suck[ ] his penis about a year ago when she was about to turn seven" and that he "remember[ed] always telling her that she had to practice licking [his] penis." App. G at 45, attached to Respondent's Answer (Docket #9).

decision is entirely different," since a judge is "less likely to be emotionally swayed by the quality of the proof of the second incident into ignoring the lack of proof as to prior incidents which are required under the crime charged [course of sexual conduct]." Petitioner's Appellate Brief at 12, App. F at 27. He states that "had the defense known when making the decision whether to waive or insist on a jury trial that the complainant had denied that the incident occurred from the witness stand before the grand jury, the decision might well have been different. *Id.* at 12-13, App. F. at 26-27.

The Court's review of the applicable case law reveals no authority for the proposition urged by Jansen, which boils down to the idea that disclosure of *Brady* material must occur prior to trial. As the Second Circuit has held, disclosure prior to trial is not mandated. *Leka*, 257 F.3d at 103. Thus, the Court cannot find that the evidence was suppressed under the meaning of *Brady* and its progeny. To the extent that Jansen is arguing that he was prejudiced by the delayed disclosure–in other words, that the outcome of his trial would have been different had a jury been determining the facts– the Court disagrees, as discussed below.

    **c.**    **Prejudice**

The prejudice inquiry is the third and final prong of any *Brady* analysis: whether there is a "reasonable probability" that the trial would have ended differently if timely disclosure were made. The term "reasonable probability" in the *Brady* context is somewhat difficult to define and it has a slightly different meaning than it does in other contexts. As Justice Souter has observed,

> It is misleading in the Brady cases to use the term "probability," which is naturally read as the cognate of "probably" and thus confused with "more likely than not" . . . . We would be better off speaking of a "significant possibility" of a different result to characterize the *Brady* materiality standard. Even then, given

>the soft edges of these phrases, the touchstone of the inquiry must remain whether the evidentiary suppression "undermines our confidence" that the factfinder would have reached the same result.

*Strickler v. Green*, 527 U.S. at 300-01 (Souter, J., concurring).

In determining whether prejudice inured to Jansen, the Court reviewed the excerpted grand jury minutes containing the complainant's grand jury testimony that constituted the *Brady* material. The Court observed that when she was being asked innocuous questions about school or her dog, the complainant answered readily; however, when she was asked to recount the incidents of sexual abuse she basically "shut down" and became non-responsive. What comes across in those grand jury minutes is not the picture of a child who was being disingenuous or who was coached into accusing Jansen of sexually abusing her. Instead, one gets the impression of a young child who would rather be any place other than a witness chair describing things of an intensely personal and difficult nature to a roomful of strangers.[3] Thus, the Court is not convinced by Jansen's argument that the outcome of his trial would have been different had

---

[3] The following excerpt, *see* App. G at 89-90, is the claimed *Brady* material:
Q. Whast [*sic*] does a boys [*sic*] private parts look like? Are they the same or different? . . . [A]re they the same or different?
A. About the same.
Q. What makes them different?
A. (No verbal response.)
Q. [W]hen you were in the bathroom with your dad and Amanda was there trying to use your phone could you see your dad's private parts? . . . [C]ould you see them? Do you remember? . . . [D]id you see his private parts?
A. No.
Q. [D]o you remember using your hands any time on your dad?
A. No.
Q. Did you ever have to touch your dad?
A. No.
Q. [D]o you know what it means to tell the truth?
A. (No verbal response.)
Q. [D]o you know what it means to tell the truth? Has it been to[o] long of a day? Do you want to go home?
A. Yes.
Q. Okay. You know what; thanks for coming in. We are all done. How's that.
(Witness excused.)

defense counsel been able to use the grand jury minutes to impeach the child complainant in front of a jury as opposed to a judge. Jansen's reason for choosing a bench trial–that a judge would be less likely to be emotionally swayed by the facts of the case–actually undermines his argument. In this Court's opinion, a jury most likely would have reacted much more negatively to an overly aggressive cross-examination of the child complainant using her grand jury testimony. Moreover, given the overwhelming evidence that Jansen did commit the crime with which he was charged, the Court finds no "significant possibility," *Strickler* 527 U.S. at 300-01, that the trial would have ended differently had the Brady material been disclosed in a more timely fashion.

**3.     Defective indictment**

Jansen contends that the indictment failed to give him sufficient notice of the crime with which he was charged. A Monroe County grand jury returned an indictment charging Jansen with one count of engaging in a course of sexual conduct against a child in the first degree, in violation of New York Penal Law 130.75(a). The indictment alleged that Jansen, "on or about and between June 1, 1997 and June 19, 1998, . . . over a period of time not less than three months in duration . . . engaged in two or more acts of sexual conduct, including at least one act of deviate sexual intercourse, by placing his penis in the mouth of a child who was less than eleven (11) years of age[.]" App. G at 44. According to Jansen, this is a "bare bones allegation" that is "clearly insufficient . . . given the time span involved." Petitioner's Memorandum of Law ("Pet'r Mem.") at 4-5 (Docket #12).

As an initial matter, the Court notes that the dates in the indictment came directly from Jansen's written, signed statement to the police. As the Second Circuit has held, "[a]n indictment

is sufficient when it charges a crime (1) with sufficient precision to inform the defendant of the charges he must meet and (2) with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *DeVonish v. Keane*, 19 F.3d 107, 108 (2d Cir.), *cert. denied*, 513 U.S. 841 (1994) (citations and quotation marks omitted). The indictment was sufficient to inform Jansen of the charges against him. *See*, *e.g.*, *DeVonish*, 19 F.3d at 109 (stating that the indictment need only "'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime'") (quoting *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir.), *cert. denied*, 423 U.S. 832 (1975)). This claim affords no basis for habeas relief.

4.     **Involuntariness of statement to police**

Jansen's memorandum of law in support of his habeas petition contains a statement that "*upon information and belief* the defendant was not advised of his *Miranda* rights prior to making the statements" to the police. Pet'r Mem. at 5 (Docket #12) (emphasis supplied). Presumably, Jansen would be in the best position to know whether or not he was read the *Miranda* warnings. In any event, this allegation is belied by Jansen's signed statement to the police in which he specifically acknowledges that the officer explained to him all of the rights he was giving up. In fact, the *Miranda* warnings (phrased in easily understood, layman's terms) are printed at the top of Jansen's statement in bold, capital letters. *See* App. G at 45. Contrary to Jansen's contention, he has provided no basis overturning the state court's determination that his statement was knowingly, voluntarily and intelligently made. Habeas relief will not issue on this claim.

5.      **Fourth Amendment violation**

Jansen asserts that the police entered his home without his consent, and that there were no exigent circumstances justifying the warrantless entry. Pet'r Mem. at 6 (Docket #12). This alleged infringement of Jansen's Fourth Amendment rights does not present a proper claim for habeas review.

The Supreme Court has explicitly held that Fourth Amendment claims that have been litigated in state court are not cognizable on habeas review:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

*Stone v. Powell*, 428 U.S. 465 (1976); *accord Capellan v. Riley*, 975 F.2d 67, 69-71 (2d Cir. 1992); *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991). Here, Jansen litigated his Fourth Amendment claim at the pretrial suppression hearing and on direct appeal to the Appellate Division. Thus, state corrective process was not only available to petitioner but was utilized by him in seeking redress for his Fourth Amendment claim. Therefore, the claim cannot support a petition for a writ of habeas corpus. *See*, *e.g.*, *Gandarilla v. Artuz*, 322 F.3d 182, 185 (2d Cir. 2003) ("[T]he merits of a Fourth Amendment challenge are not reviewable in a federal habeas proceeding if a defendant has had a fair opportunity to litigate that question in State court . . . ."); *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the [state] court's denial of the claim is a conclusive

determination that the claim will never present a valid basis for federal habeas relief."). Accordingly, Jansen's Fourth Amendment claim must be dismissed.

## CONCLUSION

For the reasons stated above, petitioner Bruce Jansen's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:   May 5, 2006
         Buffalo, New York.